**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER BYRD, TODD BYRD, and MARGARET EVERETT, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
|     Plaintiffs, | ) | No. 2:12-cv-02314-JPM-cgc |
| v. | ) ) | |
| SUNTRUST BANK, | ) ) | |
|     Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION

Before the Court is Defendant SunTrust Bank's Motion to Compel Arbitration and Stay Action, which was filed on June 6, 2012. (See ECF No. 24.) On September 28, 2012, the above-captioned case was stayed pending the resolution of the American Arbitration Association's Motion to Quash by the United States District Court for the Northern District of Georgia. (ECF No. 31.) On March 18, 2013, the United States District Court for the Northern District of Georgia dismissed the American Arbitration Association's Motion to Quash. (See Agreed Order Granting Joint Mot. to Dismiss Non-Party American Arbitration Association's Mot. to Quash, Byrd v. SunTrust Bank, No. 1:12-cv-03592-JEC (N.D. Ga. Mar. 18, 2013), ECF No. 6.) On April 4, 2013, Plaintiffs responded in opposition to Defendant's Motion to Stay. (See ECF No. 33.) With leave of the Court (ECF No. 36), on May 1, 2013, Defendant filed a Reply (see ECF No. 37). On June 23, 2013, the Court granted Defendant's Motion to Submit Supplemental Authority. (See ECF No. 39.)

For the reasons stated below, Defendant SunTrust Bank's Motion to Compel Arbitration and Stay Action (ECF No. 24) is GRANTED. Plaintiffs' claims that the arbitration clause is unconscionable (Compl., ECF No. 1, ¶¶ 133(a)-(c)) and illusory (id. ¶¶ 139(a)-(c)) are hereby DISMISSED. Plaintiffs are hereby COMPELLED to arbitrate all of their remaining claims against Defendant, and the above-captioned case is hereby STAYED pending the resolution of arbitration between the parties.

## I. BACKGROUND

The claims in the instant case involve the assessment and collection of overdraft fees from customers of Defendant SunTrust Bank ("Defendant" or "SunTrust"). (See Compl., ECF No. 1.) The Plaintiffs are Jennifer Byrd, Todd Byrd (collectively, the "Byrds"), and Margaret Everett ("Everett") (collectively, "Plaintiffs").[1] The Byrds account with SunTrust "was opened on May 20, 2009 [sic] and was closed on May 21, 2010." (Scott Aff., ECF No. 21, ¶ 5.) Everett "originally opened a checking account . . . with the National Bank of Commerce on December 3, 1997," and that account "was transferred to SunTrust Bank on April 22, 2005." (Id. ¶ 6; accord Kennedy Aff., ECF No. 22, ¶ 4.) In the instant Motion, SunTrust seeks to compel Plaintiffs to arbitrate their claims against SunTrust pursuant to the arbitration clause (the "Arbitration Clause") in

---

[1] Plaintiffs filed a Class Action Complaint (ECF No. 1), but the Court has not certified a class.

the rules governing the Plaintiffs' accounts with SunTrust (the
"Rules & Regulations").  (See Def.'s Mot., ECF No. 24.)

The Rules & Regulations were amended during the time period
relevant to the instant case.  The versions of the Arbitration
Clause relevant to the instant Motion are those contained in the
Rules & Regulations in effect in October 2009 (the "October 2009
Rules & Regulations" and the "October 2009 Arbitration Clause"),
which was in effect when the Byrds closed their account with
SunTrust, and the Rules & Regulations in effect in December 2011
(the "December 2011 Rules & Regulations" and the "December 2011
Arbitration Clause"), which governs Everett's account.[2]  (See
Def.'s Mem. in Supp., ECF No. 24-1, at 3 n.4.; Pls.' Resp., ECF
No. 33, at 16 n.3; see also October 2009 Rules & Regulations,
ECF No. 21-2; December 2011 Rules & Regulations, ECF No. 21-7.)

The October 2009 Arbitration Clause states that

> [n]otwithstanding any other provision in these rules
> and regulations, if either Depositor or the Bank has
> any preexisting, past, present or future unresolvable
> dispute, controversy or claim between us other than
> any Excluded Claim or Proceeding as defined below,
> whether founded in contract, tort, statutory or common
> law, regulation or otherwise, concerning, arising out
> of or relating to the Account, any transaction
> conducted with SunTrust or these rules and
> regulations, including any claim regarding the
> applicability, interpretation, scope or validity of
> this arbitration clause and/or these rules and
> regulations . . . and upon the demand of either party,
> it will be resolved by individual (not class or class-

---

[2] The Court refers to the "Rules & Regulations" and the "Arbitration Clause"
when there is not a relevant distinction between the October 2009 and the
December 2011 versions of the texts.

wide) binding arbitration administered by the American Arbitration Association (the "AAA") . . . or JAMS.

(October 2009 Rules & Regulations, ECF No. 21-2, at 20-21.)

The October 2009 Arbitration Clause defines an "Excluded Claim or Proceeding" as

> any of the following claims or proceedings, which will not be subject to this arbitration provision: (1) any individual action brought by you in small claims court or your state's equivalent court, unless such action is transferred, removed, or appealed to a different court; (2) the exercising of any self-help rights, including . . . set-off; or (3) any other form of relief allowed by law to enforce a security interest.

(Id. at 22.)

The October 2009 Rules & Regulations also contain expense-shifting provisions. The October 2009 Arbitration Clause states that "[t]he prevailing party shall be entitled to an award of the costs and expenses of the arbitration including an award of reasonable attorneys' fees for any Claim(s) in which the party has prevailed, except as otherwise required by applicable law." (Id. at 22.) The October 2009 Rules & Regulations contain another expense-shifting provision: "You agree to be liable to the Bank for any loss, costs, including, but not limited to reasonable attorney's fees, or expenses, to the extent permitted by law that we incur as a result of any dispute involving your Account." (See id. at 19.)

The December 2011 Arbitration Clause states that

> [a] "Claim" subject to arbitration is any claim, dispute or controversy between you and us (other than an Excluded Claim or Proceeding as set forth below), whether pre-existing, present or future, which arises

4

out of or relates to the Account, these rules and
regulations or any transaction conducted with us in
connection with the Account or these rules and
regulations. "Claim" has the broadest possible
meaning . . . . Upon demand of you or us, Claim(s)
will be resolved by individual (not class or class-
wide) binding arbitration in accordance with the terms
specified in this arbitration agreement.

(December 2011 Rules & Regulations, ECF No. 21-7, at 24.)

The December 2011 Arbitration Clause defines an "Excluded

Claim or Proceeding" by stating that

"Claim" does not include any dispute or controversy
about the validity, enforceability, coverage or scope
of this arbitration agreement or any part thereof
(including, without limitation, the Class Action
Waiver set forth below and/or this sentence); all such
disputes or controversies are for a court and not an
arbitrator to decide.

(Id. at 24.) The December 2011 Arbitration Clause further

defines an "Excluded Claim or Proceeding" by stating that

the following claims or proceedings will not be
subject to this arbitration agreement: (1) any
individual action brought by you or us in small claims
court or your state's equivalent court, unless such
action is transferred, removed, or appealed to a
different court; (2) the exercising of any self-help
rights, including set-off as described in the
paragraph below titled "Right of Offset and Security
Interest," or (3) any individual action in court by
one party that is limited to preventing the other
party from using a self-help remedy and that does not
involve a request for damages or monetary relief of
any kind.

(Id. at 25.)

The section of the Rules & Regulations that is entitled

"Right of Offset and Security Interest" is the same in both the

October 2009 and December 2011 versions of the text. Under the

5

heading "Right of Offset and Security Interest," the Rules &
Regulations state that

> [i]f you owe SunTrust money as a borrower, guarantor,
> or otherwise, and it becomes due, the Bank shall have
> the right under the law (called right of offset or
> setoff) and under these rules and regulations (by
> which you grant SunTrust a security interest in your
> Account) to use the money from your Account to pay the
> debt even if withdrawal results in an interest
> penalty, dishonor of checks or other unavailability of
> funds.

(October 2009 Rules & Regulations, ECF No. 21-2, at 23; December
2011 Rules & Regulations, ECF No. 21-7, at 29.)

The Arbitration Clause (both the October 2009 Arbitration
Clause and the December 2011 Arbitration Clause) also states
that "[i]f the AAA and JAMS are unable or unwilling to serve as
administrator, the parties may agree upon another administrator
or, if they are unable to agree, a court shall determine the
administrator." (October 2009 Rules & Regulations, ECF No. 21-
2, at 21; December 2011 Rules & Regulations, ECF No. 21-7, at
26-27.)

On April 23, 2012, Plaintiffs filed a Class Action
Complaint (the "Complaint") in this Court "on behalf of
themselves and all persons similarly situated." (See Compl.,
ECF No. 1.) In the Complaint, Plaintiffs assert that SunTrust
breached its contract with its customers (id. ¶¶ 116-22); that
SunTrust violated the Electronic Fund Transfer Act (the "EFTA"),
15 U.S.C. §§ 1693-1693r (2006) (id. ¶¶ 123-29); that the Rules &
Regulations are procedurally and substantively unconscionable

(id. ¶¶ 130-34); that Plaintiffs are entitled to a declaration that the Rules & Regulations are an illusory contract (id. ¶¶ 135-40); that SunTrust is liable for conversion (id. ¶¶ 141-52); that SunTrust is liable for unjust enrichment "if . . . the parties' contracts are deemed unconscionable, illusory, or otherwise unenforceable for any reason" (id. ¶¶ 153-61); and that, pursuant to Tennessee law, Plaintiffs are entitled to a declaration as to the meaning and effect of certain parts of the Rules & Regulations (id. ¶¶ 162-64).

Regarding the federal statutory claim in the Complaint, Plaintiffs' Second Claim for Relief alleges that SunTrust violated the EFTA by "fail[ing] to obtain affirmative consent, or opt-in [sic] from Plaintiffs," by "impos[ing] and receiv[ing] a fee" based on a provision that was not consented to, by failing to provide sufficient notice pursuant to the EFTA's implementing regulations, and by "engag[ing] in deceptive and misleading practices." (Id. ¶¶ 125-28.)

Two of the claims in the Complaint make specific reference to the Arbitration Clause. In their Third Claim for Relief, Plaintiffs claim that "[t]he Rules [&] Regulations and/or portions thereof were imposed on Plaintiffs in a [procedurally and substantively] unconscionable manner." (See id. ¶¶ 131(d)-(e).) In the Third Claim for Relief, Plaintiffs also claim that "[t]he arbitration clause within SunTrust's Rules [&] Regulations is procedurally and substantively unconscionable"

because "it was imposed upon Plaintiffs without affording them an opportunity to bargain and under such conditions that they could not bank with SunTrust except by acquiescing to the form contract," "it contains terms that are oppressive to Plaintiffs, such as SunTrust's right to obtain remedies outside of arbitration like seizing overdraft fees directly from customer accounts," and "it contains terms that are unreasonably favorable to SunTrust." (Id. ¶¶ 133(a)-(c).)

In their Fourth Claim for Relief, Plaintiffs claim that they "are entitled to a declaratory judgment establishing that Defendant's Rules [&] Regulations are illusory and unenforceable." (Id. ¶ 137.) In the Fourth Claim for Relief, Plaintiffs also claim that the "alleged agreement to arbitrate is invalid because it is illusory" due to SunTrust's "exclusive right to alter the agreement at will," SunTrust's "exclusive right to terminate its agreement at will," and SunTrust's "reserv[ation of] certain rights and remedies to itself outside of the arbitration requirement such as repossession, set-off, and foreclosure." (Id. ¶¶ 139(a)-(c).)

As stated earlier, on June 6, 2012, SunTrust filed the instant Motion to Compel Arbitration and Stay Action. (See ECF No. 24.)

## II. ANALYSIS

Defendant requests that the Court "compel[] Plaintiffs to arbitrate all claims pled in this case against SunTrust in

accordance with the arbitration agreement" and "stay[] all proceedings in this action" pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-14 (2006). (See Def.'s Mot., ECF No. 24, at 1.) Plaintiffs argue that "the Court should reject SunTrust's effort to compel arbitration in its entirety." (Pls.' Resp., ECF No. 33, at 22.)

A district court may compel arbitration, and stay proceedings until the completion of arbitration. See Glazer v. Lehman Bros., Inc., 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3-4).[3]

> When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000); accord Glazer, 394 F.3d at 451.

The Court undertakes these four tasks sequentially.

---

[3] "The language in [9 U.S.C.] § 4, 'The court shall hear the parties . . . [sic]' does not require an evidentiary hearing." Cincinnati Gas & Electric Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 159 (6th Cir. 1983); accord Marks 3-Zet-Ernst Marks GMBH & Co. KG v. Presstek, Inc., 455 F.3d 7, 14 (1st Cir. 2006) ("[A] 'hearing' on the papers may be all that is required."); Nestlé Waters N. Am. Inc. v. Bollman, No. 1:06-CV-577, 2006 WL 3690804, at *2 n.3 (W.D. Mich. Dec. 12, 2006). As in Cincinnati Gas, an evidentiary hearing is not necessary because the Court need only "determine what the language used in the contract mean[s], a question of law." See Cincinnati Gas & Electric Co., 706 F.2d at 159.

## A.    The Parties Have a Valid Arbitration Agreement.

The Court must determine if "a valid agreement to arbitrate exists between the parties." Hergenreder v. Bickford Senior Living Grp., LLC, 656 F.3d 411, 415 (6th Cir. 2011) (internal quotation marks omitted).  "'A written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."'"  Id. at 416 (quoting Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. § 2)).

"Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation." Id. (internal quotation marks omitted).  "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 377 (6th Cir. 2005) (internal quotation marks omitted).

"Tennessee law applies when . . . the [arbitration] agreements were executed in Tennessee and substantially performed in that state." Id.  In the instant case, the parties do not contest the applicability of Tennessee law. (See, e.g., Pls.' Response, ECF No. 33, at 2; Def.'s Reply, ECF No. 37, at 1.)  The parties also do not make any assertions that lead the Court to conclude that Tennessee law should not apply. (See,

e.g., Compl., ECF No. 1, ¶¶ 13-14 (asserting that the Byrds and Everett are residents of Tennessee).)

Defendant requests that the Court "compel[] Plaintiffs to arbitrate all claims pled in this case against SunTrust in accordance with the arbitration agreement." (Def.'s Mot., ECF No. 24, at 1.)  Plaintiffs do not contend that the Arbitration Clause is not a "written agreement to arbitrate disputes arising out of a transaction in interstate commerce." See Hergenreder, 656 F.3d at 416 (internal quotation marks omitted).  Rather, Plaintiffs contend that the Arbitration Clause is unenforceable because it is illusory, because it is unconscionable, and because the arbitration organizations referenced in the Arbitration Clause are not available to the parties. (See Pls.' Resp., ECF No. 33, at 4, 9, 19.)  In its Reply, Defendant argues that "Plaintiffs have failed to prove that the Arbitration [Clause] is illusory, unconscionable, or otherwise unenforceable." (Def.'s Reply, ECF No. 37, at 6.)

Plaintiffs' arguments are addressed in turn.

## 1. The Arbitrator Must Decide Whether the Entire Contract Is Illusory.

Plaintiffs argue that "SunTrust's arbitration clause, which the bank can amend or terminate at any time, is wholly illusory." (Pls.' Resp., ECF No. 33, at 22.)

Under Tennessee law, "[a] promise is illusory when it fails to bind the promisor, who retains the option of not performing; an illusory promise is not consideration for a return promise,

and so cannot be the basis for finding a contract." German v.
Ford, 300 S.W.3d 692, 704 (Tenn. Ct. App. 2009).

In interpreting the FAA, however, the United States Court
of Appeals for the Sixth Circuit has "rejected the claim that an
arbitration clause requires separate 'consideration' to be
enforceable." Glazer, 394 F.3d at 453. Furthermore, when an
arbitration clause is part of a larger contract, the Supreme
Court has interpreted the FAA to limit a federal court's inquiry
to the arbitration clause: "attacks on the validity of an
entire contract, as distinct from attacks aimed at the
arbitration clause, are within the arbitrator's ken." Preston
v. Ferrer, 552 U.S. 346, 353 (2008); accord Prima Paint Corp. v.
Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967) (holding that
"a federal court may consider only issues relating to the making
and performance of the agreement to arbitrate" and not the "the
contract generally"); Glazer, 394 F.3d at 452.

Plaintiffs' argument must be decided by the arbitrator. An
illusory contract is a contract that lacks consideration, see
German, 300 S.W.3d at 704, but an arbitration clause contained
in a larger contract does not require separate consideration,
see Glazer, 394 F.3d at 453. Plaintiffs' argument, therefore,
challenges the contract as a whole and not the Arbitration
Clause specifically. Plaintiffs' argument is "within the
arbitrator's ken" and is for the arbitrator to decide. See
Preston, 552 U.S. at 353; Glazer, 394 F.3d at 452.

The binding authority relied on by Plaintiffs is materially distinguishable.  In making their argument, Plaintiffs mistakenly rely on Sixth Circuit precedent addressing independent arbitration agreements and not arbitration clauses that are contained within larger contracts.  (See Pls.' Resp., ECF No. 33, at 5 (citing Walker, 400 F.3d at 378-80, and Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 309-10, 315-16 (6th Cir. 2000)).)  Unlike an independent arbitration agreement, see Floss, 211 F.3d at 315-16, an arbitration clause contained within a larger contract does not require separate consideration, see Glazer, 394 F.3d at 453.

**2.  The Arbitration Clause Is Not Unconscionable.**

The Tennessee Supreme Court has stated that "[t]he determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect.  Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes." Taylor v. Butler, 142 S.W.3d 277, 285 (Tenn. 2004) (internal quotation marks omitted).  These considerations indicate that "[t]he Tennessee Supreme Court recognizes both substantive and procedural elements of unconscionability." See Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 977 (6th Cir. 2007); accord Vintage Health Res., Inc. v. Guiangan, 309 S.W.3d 448,

461 (Tenn. Ct. App. 2009) ("Unconscionability can be procedural or substantive or both." (internal quotation marks omitted)).

Plaintiffs' arguments regarding procedural and substantive unconscionability are addressed in turn.

### a. The Arbitration Clause Is Not Procedurally Unconscionable.

"Procedural unconscionability is usually some impropriety during the process of forming the contract that deprives a party of a meaningful choice." Guiangan, 309 S.W.3d at 461 (internal quotation marks omitted); accord Cooper v. MRM Inv. Co., 367 F.3d 493, 503 (6th Cir. 2004); Philpot v. Tenn. Health Mgmt., Inc., 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007).

Plaintiffs' arguments regarding procedural unconscionability are not dispositive. Plaintiffs argue that the Rules & Regulations are a contract of adhesion, that Everett was not given sufficient notice when the Arbitration Clause was added to the Rules & Regulations, and that the Arbitration Clause is inconspicuous and incomprehensible. Plaintiffs' arguments are addressed in turn.

### i. The Rules & Regulations Are Not a Contract of Adhesion.

Plaintiffs argue that "SunTrust's Rules & Regulations are a contract of adhesion under Tennessee law" because the Rules & Regulations are a "standardized form contract . . . offered to its customers or [sic] a 'take it or leave it' basis, without affording them an opportunity to bargain" and "[c]ustomers of

SunTrust cannot stay with [SunTrust] except by acquiescing to the contract." (See Pls.' Resp., ECF No. 33, at 12.) Plaintiffs make this argument to support their argument that appears under the heading entitled "SunTrust's Arbitration Clause Is Unconscionable under [sic] Tennessee Law" and the subheading entitled "SunTrust's Arbitration Clause Is Procedurally Unconscionable." (Id. at 9, 12.)

Plaintiffs' argument is not necessarily an attack on the Rules & Regulations as a whole. See Preston, 552 U.S. at 353 ("[A]ttacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken."); accord Glazer, 394 F.3d at 452. Under Tennessee law, a contract is not unenforceable merely because it is adhesive: "it is well established that concluding a contract is a contract of adhesion is not determinative of the contract's enforceability." Philpot, 279 S.W.3d at 579 (citing Buraczynski v. Eyring, 919 S.W.2d 314, 320 (Tenn. 1996)). "In Tennessee, adhesion contracts are unenforceable only when the terms are 'beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable.'" Seawright, 507 F.3d at 976-77 (quoting Buraczynski, 919 S.W.2d at 320); accord Taylor, 142 S.W.3d at 286. As a result, determining that the Rules & Regulations are a contract of adhesion would not require the Court to determine that the Rules & Regulations are unenforceable.

15

A determination that the Rules & Regulations are a contract of adhesion, however, may facilitate Plaintiffs' attack on the Arbitration Clause. As indicated by the headings in their Response, Plaintiffs are attacking the Arbitration Clause as being unconscionable. (See Pls.' Resp., ECF No. 33, at 9, 12.) Under Tennessee law, it may be easier to show that an arbitration clause contained within a contract of adhesion is unconscionable. Compare Mitchell v. Kindred Healthcare Operating, Inc., 349 S.W.3d 492, 499 (Tenn. Ct. App. 2008) ("Courts are more likely to find that contracts of adhesion are unconscionable."), with Taylor, 142 S.W.3d at 286-87 (applying the doctrine relevant to adhesion contracts in holding that an arbitration clause contained within a larger contract was unconscionable). The Court, therefore, determines whether the Rules & Regulations are a contract of adhesion because it may facilitate Plaintiffs' attack on the Arbitration Clause.

Plaintiffs' argument is not dispositive because Plaintiffs do not demonstrate that the Rules & Regulations are a contract of adhesion. "Tennessee courts decline to find arbitration provisions adhesive where the consumer fails to prove that refusal to sign would cause some detriment other than not being able to buy from the particular merchant (such as not being able to obtain the goods or services elsewhere)." Cooper, 367 F.3d at 500. The Court does not find that the Rules & Regulations are a contract of adhesion in this case because Plaintiffs have

not shown, or even argued, that they could not receive banking services elsewhere.  See Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684, 687-88 (Tenn. 1996) ("There is no showing that the fees were the same at all the defendant banks or that banking services could not be obtained from other institutions.").

ii.  **The Delay in Giving Everett Notice Is Not Dispositive.**

Plaintiffs argue that "[a]fter SunTrust adopted the arbitration clause on June 1, 2006, Ms. Everett **was not notified of the addition until June 27, 2006**."  (Pls.' Resp., ECF No. 33, at 13.)

Plaintiffs, however, do not explain why this twenty-six day delay is significant in light of the fact that Everett continued to be a customer of SunTrust after receiving the notice (see Def.'s Mem. in Supp., ECF No. 24-1, at 2; Pls.' Resp., ECF No. 33, at 16 n.3).  As a result, the alleged twenty-six day delay in giving notice is not sufficient to establish that Plaintiffs were "deprive[d] . . . of a meaningful choice."  See Guiangan, 309 S.W.3d at 461 (internal quotation marks omitted).

iii. **The Arbitration Clause Is Neither Inconspicuous Nor Incomprehensible.**

Plaintiffs refer to "numerous general proofs of procedural unconscionability."  (Pls.' Resp., ECF No. 33, at 15.) Plaintiffs argue that these "general proofs" demonstrate that "[t]he arbitration clause is not presented in a conspicuous manner and fails to present customers with a meaningful choice," and that due to "its lack of conspicuousness and

comprehensibility, and the absence of any meaningful choice, the clause is procedurally unconscionable under Tennessee law." (Id.) Specifically, Plaintiffs assert that "the clause is buried on pages 20-22 of a 40-page single-spaced document," that "the text is small, approximately 8-point font," that "[t]he arbitration clause is not presented in a conspicuous manner," that it "fails to draw a customer's attention to the clause at the outset of the contract," and that the Rules & Regulations do not "direct a customer to be sure to read this language other than on pages 20-2 of the agreement." (Id.) Plaintiffs cite no authority in support of their argument.

Plaintiffs mischaracterize the Rules & Regulations to argue that the clause is inconspicuous. The use of bold, all-capital letters in both the Table of Contents and the heading of the Arbitration Clause belies Plaintiffs' assertions that the Arbitration is "buried," "fails to draw the customer's attention to the clause at the outset," and "fails to direct a customer to read this language anywhere other than on pages 20-2 of the agreement."

Regarding the October 2009 Rules & Regulations, two of the three entries in the Table of Contents that are in bold, all-capital letters direct the reader to the Arbitration Clause: the headings "**DISPUTE RESOLUTION**" and "**ARBITRATION AGREEMENT**" direct the reader to the Arbitration Clause that begins on page twenty. (See October 2009 Rules & Regulations, ECF No. 21-2, at

PageID 258.)[4]  Furthermore, those headings are in bold, all-
capital letters on page twenty of the October 2009 Rules &
Regulations.  (Id. at 20.)

Regarding the December 2011 Rules & Regulations, the
introductory paragraphs preceding the Table of Contents state in
bold, all-capital letters that customers should read the
Arbitration Clause:  **"PLEASE REVIEW THE ARBITRATION AGREEMENT IN
ITS ENTIRETY WHICH BEGINS ON PAGE 24 OF THESE RULES AND
REGULATIONS."**  (See December 2011 Rules & Regulations, ECF
No. 21-7, at PageID 336.)  Furthermore, one of the two entries
in the Table of Contents that are in bold, all-capital letters
directs the reader to the **"ARBITRATION AGREEMENT"** that begins on
page twenty-four.  (See id.)  Furthermore, that heading is in
bold, all-capital letters on page twenty-three of the December
2011 Rules & Regulations.  (Id. at 23.)

In addition, Plaintiffs fail to establish that the
Arbitration Clause is not comprehensible.  The mere assertion
that the text is in "approximately 8-point font" (Pls.' Resp.,
ECF No. 33, at 15), without citing any authority establishing
that this fact alone would make an arbitration agreement
incomprehensible, does not demonstrate that customers could not
comprehend the Arbitration Clause.

As a result, the Court finds that Plaintiffs' "numerous
general proofs of procedural unconscionability" (id.) are

---

[4] When documents do not have internal page numbers, the Court refers to the
Page Identification ("PageID") number that appears at the top right of
documents filed on the Case Management/Electronic Case Files system.

insufficient to establish that Plaintiffs were "deprive[d] . . . of a meaningful choice." See Guiangan, 309 S.W.3d at 461 (internal quotation marks omitted).

In summary, Plaintiffs' arguments regarding procedural unconscionability do not demonstrate that they were "deprive[d] . . . of a meaningful choice." See Guiangan, 309 S.W.3d at 461 (internal quotation marks omitted). The Court, therefore, finds that the Arbitration Clause is not procedurally unconscionable.

**b. The Arbitration Clause Is Not Substantively Unconscionable.**

"Substantive unconscionability involves [sic] whether the terms of the contract are overly harsh or one-sided." Guiangan, 309 S.W.3d at 461 (internal quotation marks omitted); accord Cooper, 367 F.3d at 503; Mitchell, 349 S.W.3d at 499. The terms of a contract are unconscionable if "the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" Seawright, 507 F.3d at 977 (quoting Haun v. King, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)); accord Taylor, 142 S.W.3d at 285.

Plaintiffs' arguments are not dispositive. Plaintiffs argue that the Arbitration Clause is substantively unconscionable due to SunTrust's right of offset, to the limited-liability provisions in the Rules & Regulations, and to

the expense-shifting provisions in the October 2009 Rules &
Regulations.  The Court addresses Plaintiffs' arguments in turn.

### i.  SunTrust's Right of Offset Does Not Make the Arbitration Clause Substantively Unconscionable.

Plaintiffs argue that the Arbitration Clause is
substantively unconscionable because "SunTrust can seek certain
remedies outside of arbitration, yet require Plaintiffs to seek
remedies through arbitration":  "Since SunTrust is allowed to
immediately seize overdraft fees from accounts, whereas a
complaining customer must go to arbitration, the provision is
unreasonably favorable to SunTrust."  (Pls.' Resp., ECF No. 33,
at 15-16.)

Plaintiffs' argument refers to SunTrust's "right of offset"
in the Rules & Regulations.  Under the terms of the Rules &
Regulations, if a customer owes money to SunTrust, SunTrust has
the right to offset that debt by taking money from the
customer's accounts:

> If you owe SunTrust money as a borrower, guarantor, or
> otherwise, and it becomes due, the Bank shall have the
> right under the law (called right of offset or setoff)
> and under these rules and regulations (by which you
> grant SunTrust a security interest in your Account) to
> use the money from your Account to pay the debt even
> if withdrawal results in an interest penalty, dishonor
> of checks or other unavailability of funds.

(October 2009 Rules & Regulations, ECF No. 21-2, at 23; December
2011 Rules & Regulations, ECF No. 21-7, at 29.)  The "exercising
of any self-help rights," including SunTrust's right of offset,
is explicitly exempted from the Arbitration Clause.  (October

2009 Rules & Regulations, ECF No. 21-2, at 22; December 2011
Rules & Regulations, ECF No. 21-7, at 25.)  As a result, if
SunTrust believes that a customer owes it money, SunTrust does
not have to arbitrate the matter before exercising its right of
offset to take money from that customers account.

SunTrust's right of offset, however, does not make the
Arbitration Clause substantively unconscionable.  The Table of
Contents of the Rules & Regulations indicates that the right of
offset and the Arbitration Clause are separate provisions of the
contract.  (See October 2009 Rules & Regulations, ECF No. 21-2,
at PageID 258; December 2011 Rules & Regulations, ECF No. 21-7,
at PageID 336.)  To the extent that Plaintiffs' argument
identifies a disparity of rights between SunTrust and its
customers in the Rules & Regulations as a whole, the arbitrator
must address Plaintiffs' argument.  Preston, 552 U.S. at 353
("[A]ttacks on the validity of an entire contract, as distinct
from attacks aimed at the arbitration clause, are within the
arbitrator's ken."); accord Glazer, 394 F.3d at 452.

Furthermore, SunTrust's right of offset does not allow
SunTrust to avoid arbitration.  Although SunTrust does not have
to arbitrate before exercising its right of offset, SunTrust
must still arbitrate the validity of that debt after exercising
its right of offset if a customer challenges SunTrust's
determination that the customer owed it a debt.  (See October
2009 Rules & Regulations, ECF No. 21-2, at 22; December 2011

Rules & Regulations, ECF No. 21-7, at 25.)  For example, if
SunTrust assesses an overdraft fee against a customer and
exercises its right of offset to recover that fee, SunTrust must
still arbitrate the validity of that overdraft fee if it is then
challenged by the customer.  (See id.)  As a result, SunTrust's
right of offset does not allow SunTrust to avoid arbitration.[5]

### ii.  The Arbitrator Must Decide Whether the Liability Limitations in the Rules & Regulations Make the Entire Contract Substantively Unconscionable.

Plaintiffs argue that "the Rules & Regulations explicitly
limit SunTrust's liability to less than what would otherwise be
available under applicable federal [sic] state or local laws."
(Pls.' Resp., ECF No. 33, at 16.)

This argument challenges the contract as a whole.  The
Table of Contents of the Rules & Regulations indicates that the
"Liability Limitation" and the Arbitration Clause are separate
provisions of the contract.  (See October 2009 Rules &
Regulations, ECF No. 21-2, at PageID 258; December 2011 Rules &
Regulations, ECF No. 21-7, at PageID 336.)  Accordingly,
Plaintiffs' argument must be determined by the arbitrator.
Preston, 552 U.S. at 353 ("[A]ttacks on the validity of an
entire contract, as distinct from attacks aimed at the
arbitration clause, are within the arbitrator's ken."); accord
Glazer, 394 F.3d at 452.

---

[5] Although the right of offset may require a customer to initiate arbitration
regarding claims that arose from SunTrust's belief that the customer owed it
money, there is no indication in the materials before the Court that having
to initiate arbitration for these claims makes the Arbitration Clause
unconscionable.

### iii. Plaintiffs' Argument Regarding the Expense-Shifting Provisions in the Rules & Regulations Is Not Based on Tennessee Law.

Plaintiffs argue that "[t]he fee-shifting provisions contained within the arbitration clause also render the clause substantively unconscionable under Tennessee law." (Pls.' Resp., ECF No. 33, at 16.) Plaintiffs argue that "SunTrust . . . endangers customers by exposing them to the risk of paying the Bank's legal fees in arbitration" and that "Plaintiffs cannot risk bringing a claim in arbitration for fear that they will be assessed all of the Bank's legal fees at the conclusion of the proceeding." (Id. at 17.)

Plaintiffs' argument does not rely on contract law, and Plaintiffs do not cite any Tennessee law in making the argument. (See id. at 16-19.) Instead, Plaintiffs' argument relies on federal-court decisions that determined whether certain federal statutory rights would be adequately protected in arbitration. (Id.) Accordingly, Plaintiffs' argument appears to challenge the validity of the expense-shifting provisions in light of Plaintiffs' federal statutory rights. See infra Part II.C.2.a.

Even if Plaintiffs' argument is addressed under Tennessee law, however, it is not dispositive. Under Tennessee law, "[w]hen the parties' contract provides that the prevailing party is entitled to reasonable attorney's fees in litigation to enforce the contract, the party who prevails is contractually entitled to recover its reasonable attorney's fees, and the

trial court has no discretion regarding whether to award attorney's fees or not." Meredith v. Weller, No. E2010-02573-COA-R3-CV, 2012 WL 219082, at *11 (Tenn. Ct. App. Jan. 25, 2012) (alteration in original) (internal quotation marks omitted). Furthermore, to the extent that other costs are shifted, the October 2009 Rules & Regulations limit such costs to those permitted by law. (See October 2009 Rules & Regulations, ECF No. 21-2, at 19, 22.) Accordingly, the terms of the October 2009 Rules & Regulations do not make the October 2009 Arbitration Clause substantively unconscionable pursuant to Tennessee law.

In summary, Plaintiffs' arguments regarding substantive unconscionability do not to demonstrate that "the terms of the contract are overly harsh or one-sided," see Guiangan, 309 S.W.3d at 461 (internal quotation marks omitted), or that the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense," see Seawright, 507 F.3d at 977 (internal quotation marks omitted). The Court, therefore, finds that the Arbitration Clause is not substantively unconscionable.

### 3. The Unavailability of AAA and JAMS Would Not Make the Arbitration Clause Unenforceable.

Plaintiffs argue that "[t]he unavailability of AAA and JAMS provides an independent reason upon which to deny arbitration." (Pls.' Repl., ECF No. 33, at 22.)

Plaintiffs' argument relies on nonbinding authority indicating that the Court must determine if the parties intended the choice of AAA and JAMS to be an integral part of the Arbitration Clause. Plaintiff cites cases that rely on the proposition that "[o]nly if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration." (See Pls.' Resp., ECF No. 33, at 21-22 (citing Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000), and Carideo v. Dell, Inc., No. C06-1772JLR, 2009 WL 3485933, at *4 (W.D. Wash. Oct. 26, 2009)).) Plaintiff also relies on a case that indicates that courts must look to state law to determine if the parties intended an arbitration forum to be an integral part of their agreement. (See id. (citing Ranzy v. Tijerina, 393 F. App'x 174, 176 (5th Cir. 2010)).) Under Tennessee law, "[c]ourts must look at the plain meaning of the words in a contract to determine the parties' intent." Allmand v. Pavletic, 292 S.W.3d 618, 630 (Tenn. 2009).

The plain language of the Arbitration Clause indicates that the choice of AAA and JAMS is not integral to the Arbitration Clause. If AAA and JAMS are unavailable, the Arbitration Clause states that another forum may be chosen: "If the AAA and JAMS are unable or unwilling to serve as administrator, the parties may agree upon another administrator or, if they are unable to agree, a court shall determine the administrator." (See October

2009 Rules & Regulations, ECF No. 21-2, at 21; December 2011
Rules & Regulations, ECF No. 21-7, at 26-27.)  Accordingly, the
choice of AAA and JAMS is not integral to the Arbitration
Clause.  The cases cited by Plaintiffs indicate that the
unavailability of AAA and JAMS would not make the Arbitration
Clause unenforceable.

### B. The Scope of the Arbitration Agreement Encompasses All of Plaintiffs' Remaining Claims.

Defendant requests that the Court "compel[] Plaintiffs to
arbitrate all claims pled in this case against SunTrust."
(Def.'s Mot., ECF No. 24, at 1.)  Plaintiffs argue that "the
Court should reject SunTrust's effort to compel arbitration in
its entirety."  (Pls.' Resp., ECF No. 33, at 22.)  Neither party
argues that particular claims are outside the substantive scope
of the Arbitration Clause.

The district court must determine "that the specific
dispute falls within the substantive scope of [the arbitration]
agreement."  Hergenreder, 656 F.3d at 416 (internal quotation
marks omitted).  "An order to arbitrate should not be denied
'unless it may be said with positive assurance that the
arbitration clause is not susceptible of an interpretation that
covers the asserted dispute.'"  Turi v. Main St. Adoption
Servs., LLP, 633 F.3d 496, 509 (6th Cir. 2011) (quoting AT & T
Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650
(1986)).

When faced with a broad arbitration clause, such as
one covering <u>any</u> dispute arising out of an agreement,
a court should follow the presumption of arbitration
and resolve doubts in favor of arbitration. Indeed,
in such a case, only an express provision excluding a
specific dispute, or the most forceful evidence of a
purpose to exclude the claim from arbitration, will
remove the dispute from consideration by the
arbitrators.

<u>NCR Corp. v. Korala Assocs. Ltd.</u>, 512 F.3d 807, 813 (6th Cir.

2008) (internal quotation marks omitted).

With certain explicit exceptions, the Arbitration Clause

covers any dispute between the parties arising out of the Rules

& Regulations. The October 2009 Arbitration Clause states that

"any preexisting, past, present or future unresolvable dispute,

controversy or claim between us other than any Excluded Claim or

Proceeding as defined below . . . arising out of or relating to

the Account, any transaction conducted with SunTrust or these

rules and regulations" is subject to arbitration. (October 2009

Rules & Regulations, ECF No. 21-2, at 20-21.) The December 2011

Arbitration Clause states that

A "Claim" subject to arbitration is any claim, dispute
or controversy between you and us (other than an
Excluded Claim or Proceeding as set forth below),
whether pre-existing, present or future, which arises
out of or relates to the Account, these rules and
regulations or any transaction conducted with us in
connection with the Account or these rules and
regulations.

(December 2011 Rules & Regulations, ECF No. 21-7, at 24.) As a

result, there must be "an express provision excluding a specific

dispute, or the most forceful evidence of a purpose to exclude

the claim from arbitration," before the Court will exclude any of Plaintiffs' claims from arbitration.  See NCR Corp., 512 F.3d at 813.

There is an applicable "Excluded Claim or Proceeding" in the December 2011 Arbitration Agreement.[6]  An "Excluded Claim or Proceeding" in the December 2011 Arbitration Clause includes "any dispute or controversy about the validity, enforceability, coverage or scope of this arbitration agreement or any part thereof."  (See December 2011 Rules & Regulations, ECF No. 21-7, at 24.)

The Court has already addressed the two claims that challenge validity of the Arbitration Clause.  First, in their Third Claim for Relief, which claims that the Rules & Regulations are unconscionable (see Compl., ECF No. 1, ¶¶ 131(d)-(e)), Plaintiffs also claim that "[t]he arbitration clause within SunTrust's Rules [&] Regulations is procedurally and substantively unconscionable" because "it was imposed upon Plaintiffs without affording them an opportunity to bargain and under such conditions that they could not bank with SunTrust except by acquiescing to the form contract," "it contains terms that are oppressive to Plaintiffs, such as SunTrust's right to

---

[6] In contrast, the October 2009 Arbitration Clause explicitly states that "any claim regarding the applicability, interpretation, scope or validity of this arbitration clause" must be submitted to arbitration "upon demand of either party."  (See October 2009 Rules & Regulations, ECF No. 21-2, at 21.)  The October 2009 Arbitration Clause applies only to the Byrds (see Def.'s Mem. in Supp., ECF No. 24-1, at 3 n.4), and neither party demanded that the Byrds arbitrate the validity or enforceability of the October 2009 Arbitration Clause.  As a result, the Court resolved the challenges to the validity and enforceability of the October 2009 Arbitration Clause.  See supra Part II.A.

obtain remedies outside of arbitration like seizing overdraft fees directly from customer accounts," and "it contains terms that are unreasonably favorable to SunTrust." (Id. ¶¶ 133(a)-(c).) The Court has already addressed and rejected these challenges to the validity of the Arbitration Clause. See supra Part II.A.2. Accordingly, Plaintiffs' claim that the Arbitration Clause is procedurally and substantively unconscionable (Compl., ECF No. 1, ¶¶ 133(a)-(c)) is DISMISSED.

Second, in their Fourth Claim for Relief, which claims that Plaintiffs are entitled to a declaration that the Rules & Regulations are an illusory contract (Compl., ECF No. 1, ¶ 137), Plaintiffs also claim that the "alleged agreement to arbitrate is invalid because it is illusory" due to SunTrust's "exclusive right to alter the agreement at will," SunTrust's "exclusive right to terminate its agreement at will," and SunTrust's "reserv[ation of] certain rights and remedies to itself outside of the arbitration requirement such as repossession, set-off, and foreclosure." (Id. ¶¶ 139(a)-(c).) The Court has already addressed and rejected these challenges to the validity of the Arbitration Clause. See supra Part II.A.1. Accordingly, Plaintiffs' claim that the Arbitration Clause is illusory (Compl., ECF No. 1, ¶¶ 139(a)-(c)) is DISMISSED.

The remaining explicit exceptions do not apply to Plaintiffs' other claims. The Complaint does not contain a claim brought in small-claims court, a claim to exercise self-

help, a claim to prevent another party from exercising self-help, or a claim to enforce a security interest. (See October 2009 Rules & Regulations, ECF No. 21-2, at 22; December 2011 Rules & Regulations, ECF No. 21-7, at 25.)  Furthermore, Plaintiffs do not offer any "evidence of a purpose to exclude [any] claim from arbitration."  See NCR Corp., 512 F.3d at 813 (internal quotation marks omitted).

The Court, therefore, DISMISSES Plaintiffs' claims that the Arbitration Clause is unconscionable and illusory and finds that all of Plaintiffs' remaining claims are within the scope of the Arbitration Clause.

### C. Plaintiffs' Federal Statutory Claim Is Arbitrable and the Expense-Shifting Provisions Are Enforceable in Light of the Federal Statutory Claim.

Plaintiffs' Second Claim for Relief alleges that SunTrust violated the EFTA by "fail[ing] to obtain affirmative consent, or opt-in [sic] from Plaintiffs," by "impos[ing] and receiv[ing] a fee" based on a provision that was not consented to, by failing to provide sufficient notice pursuant to the EFTA's implementing regulations, and by "engag[ing] in deceptive and misleading practices." (Compl., ECF No. 1, ¶¶ 125-28.)

Plaintiffs' argument is relevant to only the October 2009 Arbitration Clause. (Pls.' Resp., ECF No. 33, at 16 n.3.) Accordingly, it is only relevant to the Byrds' EFTA claim. (Id.)

The Court first determines whether Plaintiffs' EFTA claim is arbitrable. The Court then determines whether the expense-shifting provisions of the Rules & Regulations are enforceable.

### 1. Plaintiffs' EFTA Claim Is Arbitrable.

"'Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" Landis v. Pinnacle Eye Care, LLC, 537 F.3d 559, 562 (6th Cir. 2008) (quoting Gilmer, 500 U.S. at 26). "The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987); accord Morrison, 317 F.3d at 659 (quoting Green Tree Fin. Corp.-Ala., 531 U.S. at 81).

In the instant case, Plaintiffs' EFTA rights should be arbitrated. Plaintiffs do not argue that their EFTA rights cannot be arbitrated. Plaintiffs, therefore, have not met the burden of showing that Congress intended to preclude arbitration for EFTA claims. See McMahon, 482 U.S. at 227; accord Morrison, 317 F.3d at 659. Furthermore, other courts have concluded that "claims under the EFTA are not exempt from arbitration." See Novak v. JP Morgan Chase Bank, NA, No. 06-14862, 2008 WL 907380,

at *9 (E.D. Mich. Mar. 31, 2008) (citing <u>Johnson v. W. Suburban</u> <u>Bank</u>, 225 F.3d 366, 379 (3d Cir. 2000)).

As a result, the Court finds that Plaintiffs' EFTA claim is subject to the Arbitration Clause.

### 2. The Expense-Shifting Provisions in the October 2009 Rules & Regulations Are Enforceable.

Relying on federal-court decisions, Plaintiffs argue that the expense-shifting provisions in the October 2009 Rules & Regulations are unenforceable because "[r]equiring Plaintiffs like the Byrds to be liable for SunTrust's attorneys' fees ensures that no such claims will be brought in arbitration" (Pls.' Resp., ECF No. 33, at 18): "Where, as here, a party cannot vindicate their rights given the financial exposure of having to pay SunTrust's attorneys' fees, the arbitration clause in [sic] unenforceable" (<u>id.</u> at 19).

Plaintiffs refer to two relevant provisions of the October 2009 Rules & Regulations.[7] The Arbitration Clause states that

---

[7] Plaintiffs also refer to a provision in the October 2009 Arbitration Clause, which states that "any party who wrongfully fails to comply with this provision shall be liable to the other party for all reasonable costs and expenses, including attorneys' fees, incurred in enforcing this provision." (<u>See</u> Pls.' Resp., ECF No. 33, at 17 (quoting October 2009 Rules & Regulations, ECF No. 21-2, at 21).) Plaintiffs characterize this as a "one-way fee provision against those fighting arbitration." (<u>See</u> <u>id.</u> at 22.) Plaintiffs, however, cite no authority suggesting that a provision awarding expenses only if a party "wrongfully fails to comply" with an arbitration provision is substantively unconscionable. Furthermore, this provision does not target customers: either party to the agreement will be responsible for the other party's expenses for wrongfully resisting arbitration. The provision is not unconscionable simply because Plaintiffs have decided to challenge the Arbitration Clause in the instant dispute. Finally, the provision does not contribute to the expense of an arbitration proceeding. Challenging the Arbitration Clause in this Court is a proceeding that is separate and distinct from an arbitration proceeding addressing the merits of Plaintiffs' claims. As a result, reference to this expense-shifting

"[t]he prevailing party shall be entitled to an award of the costs and expenses of the arbitration including an award of reasonable attorneys' fees for any Claims(s) in which the party has prevailed, except as otherwise required by applicable law." (October 2009 Rules & Regulations, ECF No. 21-2, at 22.) The October 2009 Rules & Regulations also contain a broader provision that may affect the Arbitration Clause: "You agree to be liable to the Bank for any loss, costs, including, but not limited to reasonable attorney's fees, or expenses, to the extent permitted by law that we incur as a result of any dispute involving your Account." (Id. at 19.)

The Court first addresses the proper characterization of Plaintiffs' argument regarding expense-shifting provisions in the October 2009 Rules & Regulations. The Court then gives three reasons why Plaintiffs' argument is not dispositive: Plaintiffs rely primarily on inapplicable Sixth Circuit precedent; Plaintiffs do not meet their burden of showing that the fees associated with arbitration foreclose their ability to vindicate their federal statutory rights; and Plaintiffs' arguments regarding the fees associated with arbitration are even less persuasive in light of recently decided Supreme Court precedent.

---

provision in the Arbitration Clause does not make Plaintiffs' argument more persuasive.

### a. Plaintiffs' Argument Is Relevant to a Determination of Whether a Federal Statutory Right Can Be Vindicated in Arbitration.

In their argument regarding expense-shifting provisions in the October 2009 Rules & Regulations, Plaintiffs rely exclusively on federal-court precedent addressing the vindication of federal statutory rights in arbitration. (See Pls.' Resp., ECF No. 33, at 16-19.) For example, Plaintiffs cite Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79 (2000), which is "limited by [its] plain language to the question of whether an arbitration clause is enforceable where federal statutorily provided rights are affected," Stutler v. T.K. Constructors, Inc., 448 F.3d 343, 346 (6th Cir. 2006). Accordingly, Plaintiffs' argument is relevant to a determination of whether a federal statutory right is arbitrable. See Green Tree Financial Corp.-Alabama, 531 U.S. at 90 ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum.")

### b. Plaintiffs Rely Primarily on Inapplicable Sixth Circuit Precedent.

In making their argument, Plaintiffs rely primarily on Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003). (See Pls.' Resp., ECF No. 33, at 17-19.)

Plaintiff's reliance on Morrison is misplaced. The Sixth Circuit "clearly limited [its] holding[] in Morrison . . . to the validity of arbitration clauses in employment agreements

where an employee's statutorily created federal civil rights are at issue." Stutler, 448 F.3d at 345; accord Jean v. The Stanley Works, No. 1:04CV1904, 2008 WL 2778849, at *9 (N.D. Ohio July 14, 2008). Plaintiffs' claims neither arise from an employment agreement nor seek to vindicate federal rights arising under "anti-discrimination legislation." See Stutler, 448 F.3d at 345 (internal quotation marks omitted). As a result, the Court finds that Morrison is not applicable to Plaintiffs' claims.

Even if Morrison were applicable, Plaintiffs' argument would not be dispositive. Morrison states that "the burden of demonstrating that incurring [prohibitive] costs is likely under a given set of circumstances rests, at least initially, with the party opposing arbitration." Morrison, 317 F.3d at 659-60. Plaintiffs, however, have not met their burden. A court must determine if the challenged provision "would deter a substantial number of similarly situated potential litigants." Id. at 663. Plaintiffs provide no information about the Byrds' income or resources that would allow the Court to "define the class of . . . similarly situated potential litigants." See id.

**c. Plaintiffs Do Not Meet Their Burden of Showing that They Will Be Unable to Vindicate Their Rights in Arbitration Due to Prohibitive Costs.**

In arguing that they will be "unable to vindicate [their] rights in arbitration," Plaintiffs cite Green Tree Financial Corp.-Alabama, 531 U.S. at 89-90, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991), and Mitsubishi Motors Corp.

v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 632, 637-38
(1985).  (See Pls.' Resp., ECF No. 33, at 19.)

Green Tree Financial Corp.-Alabama states that, "[w]here
. . . a party seeks to invalidate an arbitration agreement on
the ground that arbitration would be prohibitively expensive,
that party bears the burden of showing the likelihood of
incurring such costs."  Green Tree Fin. Corp.-Ala., 531 U.S. at
92; accord Burden v. Check Into Cash of Ky., LLC, 267 F.3d 483,
492 (6th Cir. 2001).

In support of their argument, Plaintiffs cite SunTrust's
Amended Responses (ECF No. 33-5) to argue "that there have only
been a total of **two** consumer arbitrations conducted against
SunTrust since the insertion of the arbitration clause in June
of 2006" and that one of those arbitrations "resulted in the
**claimant being assessed over $30,000 in fees at the conclusion
of the arbitration**."  (See Pls.'s Resp., ECF No. 33, at 18-19
(citing ECF No. 33-5 at 9-11).)

SunTrust's Amended Responses, however, do not establish
that Plaintiffs will incur prohibitive costs in arbitrating
their claims.  The fact that only two consumer arbitrations were
conducted "since the insertion of the arbitration clause in June
of 2006" (see Pls.'s Resp., ECF No. 33, at 18) does not
establish that the October 2009 Arbitration Clause made
arbitration prohibitively expensive.  Plaintiffs have not
provided the Court with a frame of reference to determine

37

whether the fact that only two disputes were submitted to arbitration represents an increase or decrease in the number of claims that were pursued by customers.  As a result, the Court cannot assess the significance of this fact.

Regarding the evidence of fees assessed to a claimant after arbitration, SunTrust's Amended Responses do not provide dispositive evidence.  To the extent that Plaintiffs focus on attorneys' fees, Plaintiffs' evidence does not give any indication that attorneys' fees were a significant part of the fees paid by claimants in past arbitration actions against SunTrust.  Plaintiffs' "Interrogatory No. 13" is too imprecise to produce information supporting its argument:  "For each arbitration [involving consumer accounts since 2002], identify the amount of fees, including but not limited to filing fees, hearing fees, and administrative fees paid to the arbitrator or arbitration service."  (See ECF No. 33-5 at 10.)  As a result, there is no indication of how much of the arbitration fees were attorneys' fees in SunTrust's Amended Responses.

Furthermore, even considering all of the potential arbitration fees, the Court is not able to tell whether the assessment of $30,000 against a consumer would be representative of the fees Plaintiffs could potentially incur.  SunTrust's Amended Responses cited by Plaintiffs do not provide enough detail about the referenced arbitration.  SunTrust's Amended Responses indicate only that the arbitration fees were assessed

against a corporate claimant for a dispute that did not involve overdraft fees.  (See id. at 11.)  As a result, Plaintiffs have not met their "burden of showing the likelihood of incurring [prohibitive] costs."  Green Tree Fin. Corp.-Ala., 531 U.S. at 92; accord Burden, 267 F.3d at 492.

> **d.    Plaintiffs' Arguments Regarding the Fees Associated with Arbitration Are Even Less Persuasive in Light of Recently Decided Supreme Court Precedent.**

In arguing that, "[w]here, as here, a party cannot vindicate their rights given the financial exposure of having to pay SunTrust's attorneys' fees, the arbitration clause in [sic] unenforceable," Plaintiffs cite In re American Express Merchants' Litigation, 667 F.3d 204, 219 (2d Cir. 2012).  (See Pls.' Resp., ECF No. 33, at 19).  The case cited by Plaintiffs, however, was recently reversed by the United States Supreme Court in American Express Co. v. Italian Colors Restaurant, No. 12-133, 2013 WL 3064410 (June 20, 2013).

In their Motion for Leave to Submit Supplemental Authority, Defendant argues that, in light of the Supreme Court's recent decision in Italian Colors Restaurant, "SunTrust's Arbitration [Clause] cannot be found unenforceable **even if** Plaintiffs' costs of individually arbitrating their federal statutory claim are prohibitively expensive."  (Def.'s Mot. for Leave to Submit Supplemental Authority, ECF No. 38, ¶ 3.)

This Court does not agree with Defendant's interpretation of Italian Colors Restaurant.  It does appear, however, that

Italian Colors Restaurant makes it more difficult to demonstrate that particular provisions in an arbitration clause are unenforceable because those provisions make it more expensive to arbitrate a federal statutory claim.  See Italian Colors Rest., 2013 WL 3064410, *5.  Accordingly, the Court finds that Plaintiffs' arguments are even less persuasive in light of Italian Colors Restaurant.

In Italian Colors Restaurant, the Supreme Court "consider[ed] whether a contractual waiver of class arbitration is enforceable under the [FAA] when the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery."  Italian Colors Rest., 2013 WL 3064410, *2. The Supreme Court held that the waiver of class arbitration was enforceable because "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy."  Id. at *5. The Supreme Court explained that the "'effective vindication' exception" raised by the respondents in that case "finds its origin in the desire to prevent 'prospective waiver of a party's right to pursue statutory remedies.'"  Id. (quoting Mitsubishi Motors Corp., 473 U.S. at 637 n.19.)  Accordingly, although the effective vindication exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," the Supreme Court expressed uncertainty as to whether the exception could include claims

regarding high arbitration fees: "it would _perhaps_ cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." _Id._ (emphasis added) (citing _Green Tree Fin. Corp.-Ala._, 531 U.S. at 90).

_Italian Colors Restaurant_ appears to make it more difficult for Plaintiffs to show that the Arbitration Clause is unenforceable due to high fees associated with arbitration. After _Italian Colors Restaurant_, if there is any situation in which provisions in an arbitration agreement increasing the cost of arbitration are unenforceable, it appears that the increased costs must do more than merely create a situation in which "it is not worth the expense involved in _proving_ a statutory remedy," _see Italian Colors Rest._, 2013 WL 3064410, *5, because "the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery," _id._ at *2. Rather, it appears that the increased costs must be "so high as to make access to the forum impracticable," such that the costs effectively "constitute the elimination of the _right_ to _pursue_ that remedy." _See id._ at *5.

Plaintiffs have not met the burden of showing that increased costs associated with the expense-shifting provisions will be more than their projected recovery, much less the burden of showing that those increased costs will be so high as to act

as a de facto elimination of their right to pursue their statutory claim.[8]

In summary, Plaintiffs do not show that the expense-shifting provisions in the Arbitration Clause are unenforceable pursuant to federal-court precedent. The Court, therefore, finds that the expense-shifting provisions in the Rules & Regulations do not impermissibly limit Plaintiffs' ability to pursue their federal statutory rights.

### D. The Court Will Stay Proceedings Regarding All of Plaintiffs' Remaining Claims.

"If a plaintiff's cause of action is covered by an arbitration clause, the court must stay the proceedings until the arbitration process is complete." Glazer, 394 F.3d at 451 (citing 9 U.S.C. § 3); accord McMahon, 482 U.S. at 226 ("[A] court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement . . . .").

All of Plaintiffs' remaining claims are arbitrable, the Court having found that all of Plaintiffs' remaining claims are within the scope of the Arbitration Clause. See supra Part II.B. The Court has also found that Plaintiffs' federal statutory claim is arbitrable. See supra Part II.C.

As a result, Plaintiffs' claims are all "covered by" the Arbitration Clause, and the Court "must stay the proceedings

---

[8] Although the Arbitration Clause contains a class-action waiver (October 2009 Rules & Regulations, ECF No. 21-2, at 20; December 2011 Rules & Regulations, ECF No. 21-7, at 25-26.), Plaintiffs do not raise an argument about the effect of that class-action waiver (see Pls.' Resp., ECF No. 33, at 9 n.2).

until the arbitration process is complete."[9]  See Glazer, 394

F.3d at 451.

## III. CONCLUSION

For the reasons stated above, Defendant SunTrust Bank's

Motion to Compel Arbitration and Stay Action (ECF No. 24) is

GRANTED.  Plaintiffs' claims that the arbitration clause is

unconscionable (Compl., ECF No. 1, ¶¶ 133(a)-(c)) and illusory

(id. ¶¶ 139(a)-(c)) are hereby DISMISSED.  Plaintiffs are hereby

COMPELLED to arbitrate all of their remaining claims against

Defendant, and the above-captioned case is hereby STAYED pending

the resolution of arbitration between the parties.


**IT IS SO ORDERED,** this 22nd day of July, 2013.

/s/ JON P. McCALLA
JON P. McCALLA
CHIEF JUDGE, UNITED STATES
DISTRICT COURT

---

[9] When all claims are referred to arbitration, a court may dismiss a case as opposed to staying it.  Ozormoor v. T-Mobile USA, Inc., 354 F. App'x 972, 975 (6th Cir. 2009); Winn v. Tenet Healthcare Corp., No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407, at *10 (W.D. Tenn. Jan. 27, 2011).  Defendant, however, does not request that the case be dismissed.  Accordingly, the Court will not dismiss the case.